RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 02 2015

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JOSEPH C ROBERTS <br><br> Plaintiff, <br><br> -vs- <br><br> BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA; SAVANNAH STATE UNIVERSITY; CHERYL DAVENPORT DOZIER, in her official capacity as President of Savannah State University; DAVID SMITH, individually and in his official capacity as Interim Vice President of Student Affairs; BONITA BRADLEY, individually and in her official capacity as Assistant to the Vice President of Student Affairs & Deputy Title IX coordinator; TOYA CAMACHO, individually and her official capacity as Title IX coordinator. <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. CV: <br><br> **1:15-CV-0958** <br><br> Jury Trial Demanded |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## VERIFIED COMPLAINT

Plaintiff Joseph C Roberts for his Verified Complaint against the Board of Regents of the University System of Georgia and Savannah State University respectfully alleges as follows:

### THE NATURE OF THIS ACTION

1.     This case arises out of the actions taken and procedures employed by Defendants The Board of Regents of the University System of Georgia and Savannah State University ("SSU") concerning allegations made against Plaintiff Joseph Roberts, a former male senior student at SSU as a result of allegations of harassment from members of the sorority Delta Sigma Theta and fellow SSU students Aliesha Donald, Janine Dawkins, and Gabrielle Whisenton.

2.     These allegations purportedly refer to what were clearly false incident reports for activity that occurred on or about April 3, 2013 ("the incident").

3.     After an excessively hurried investigation, which only included interviews and written statements from Dawkins and Donald, Student Ethics Coordinator Corey Phillips thereafter determined that Plaintiff's continual presence on campus constituted a serious threat of harm to the campus community and issued a Summary Suspension declaring Plaintiff vacate all University premises immediately.

4.     Upon Phillip's review of the Incident Report and statement from Dawkins, on April 3, 2013, Phillips agreed that "under a preponderance of the evidence, Dawkins was harassed by Roberts. As Plaintiff's sanction, SSU initially determined that summary suspension was appropriate, and, upon reconsideration, modified his sanction to delay his graduation, provided that he meets certain enumerated conditions (the "Sanctions").

5.     In addition to the damages sustained by Joseph Roberts at SSU throughout the delayed investigation process, including his inability to attend his own graduation or receive his diploma on graduation day, Joseph Roberts has sustained tremendous damages to his mental health and career prospects as a result of the Decision and Sanction, including a suicide attempt, and the loss of three (3) job offers to date, due to the fact that he is unable to produce his diploma upon demand to such prospective employers.

6.     Throughout the investigative process, SSU failed to abide by its own guidelines and regulations and acted in direct violation of federal and/or state law.

7.     A non-exhaustive list of SSU's wrongful actions include the following: (i) SSU failed to conduct a thorough and impartial investigation; (ii) SSU employed a single-investigator model which resulted in a lack of due process for Plaintiff; (iii) SSU engaged in an investigation

2

biased against Joseph Roberts as the male accused; (iv) SSU wholly adopted Donald's unsupportable theory of being "afraid for her life" as evidence; (v) SSU relied on an investigation consisting of false statements from the accusers and ignored important qualifying statements; (vi) SSU made assessments of credibility and evidentiary weight with respect to each fact witness without any ascertainable rationale or logic; (vii) SSU failed to afford Roberts the requisite presumption of innocence required by a preponderance of the evidence standard; (viii) the sanction was unwarranted and disproportionate in light of the circumstances; and (ix) SSU failed to afford Roberts the right to make a statement and procedural due process right to hearing, all of which demonstrated procedural errors in violation of Title IX.

8.      When SSU subjected Joseph Roberts to disciplinary action, it did so in an arbitrary and capricious way, and in discrimination against him on the basis of his male sex. SSU failed to adhere to its own guidelines and regulations, and the guidelines and regulations themselves are insufficient to protect the rights of male students. The decision reached was discriminatory; given the evidence (or lack thereof), a discriminatory bias against males was required for a conclusion of harassment to be reached.

9.      Plaintiff has been greatly damaged by the actions of Defendant Savannah State University: his mental health has suffered as he has attempted to recover from the trauma of a suicide attempt; his career prospects have been severely compromised as he is unable to produce a diploma to potential employers or graduate programs; the monies spent on obtaining a college education at Defendant Savannah State University squandered.

10.     Joseph Roberts therefore brings this action to obtain relief based on causes of action, for among other things, violations of the Title IX of the Education Amendments of 1972 and state law.

3

## THE PARTIES

11.     Plaintiff is was at all times material to this complaint a student attending the Defendant Savannah State University. During the 2009-2013 school years, Roberts resided on and near the Savannah State University campus in Savannah, Georgia. He now resides in Atlanta, GA.

12.     Defendant Board of Regents of the University System of Georgia ("the Board") is a political subdivision of the State of Georgia with the capacity to sue or be sued. The Board operates and supervises thirty-one university and college institutions throughout the State of Georgia and is headquartered in Atlanta, Georgia.

13.     Defendant Savannah State University ("SSU") is a college-level institution of higher learning located in Savannah, Georgia, and is a political subdivision of the State of Georgia with the capacity to sue or be sued and may be served by serving its President at Hill Hall. SSU was at all times relevant herein, operating within the course and scope of its authority, and under color of state law and in receipt of federal funding and financial assistance within the meaning of 20 U.S.C. §§ 1681-1688 and is otherwise subject to Title IX.

14.     Defendant Cheryl Davenport Dozier, the president of Savannah State University, a public university organized and existing under the laws of the State of Georgia, is responsible for overseeing campus and administration including its policies and procedures, and is sued in her official capacity.

15.     Defendant David Smith, the current Chief of Staff and former Interim Vice President of Student Affairs at Savannah State University, was responsible for all functions and matters relating to student affairs and services including the policies and procedures for student

4

organizations, oversaw and supervised Assistant Vice President for Student Affairs, Bonita Bradley, and is sued in both his official and individual capacities.

16. Defendant Toya C. Camacho, the Title IX Coordinator at SSU, is responsible for ensuring Title IX compliance including monitoring and investigating implementation of Title IX Compliance at the University, coordination of training, communications, administration of grievance procedures for faculty, staff, students and other members of the University community, and is sued in both her official and individual capacities.

17. Defendant Bonita Bradley, the Deputy Title IX Coordinator and Assistant to the Vice President for Student Affairs at SSU, is responsible for assisting the Vice President of Student Affairs in all functions and matters relating to student affairs and services including the policies and procedures for student organizations, and is sued in both her official and individual capacities.

## JURISDICTION AND VENUE

18. This is a civil rights complaint brought by the Plaintiff against the named Defendants for deprivation of Plaintiff's rights secured by Title IX and the Fourteenth Amendment to the United States Constitution, suspending and punishing Joseph C Roberts, and violating his constitutionally protected rights and denying the same. Plaintiff seeks injunctive relief and declaratory relief pursuant to 42 U.S.C. §§ 1983 and 1988 which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

19. This is an action involving claims under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 [hereinafter, "Title IX"], arising out of a violation of civil rights and targeted gender discrimination.

20. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983. Jurisdiction is also conferred on this Court by 28 U.S.C. § 1331 because the cause of action arises under the Constitution and laws of the United States. This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. § 2201-02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed R. Civ. P. 65; and costs under 42 U.S.C. § 1988.

21. The Court has jurisdiction under 28 U.S.C. § 1637 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

22. Plaintiff served notice of his intent to file this suit in accordance with the O.C.G.A. 50-21-26. (A copy of the notice is attached hereto as Exhibit A.)

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all defendants reside in the state of Georgia, with some defendants residing in this judicial district, and all of the acts described in this complaint occurred in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### I. Agreements, Representations, & Warranties Between Roberts and Savannah State University

24. Roberts was at SSU for four years in pursuit of his degree. During his matriculation, he pledged Omega Psi Phi, campaigned for student body Vice President, was a member of the SSU Quiz Bowl Team, a Resident Assistant, and served as a student representative on the SSU Hiring Committee. Setting his sights on a degree from a Historically

Black University, Roberts was ready to graduate and become a member of the College of Liberal

Arts and Sciences class of 2013 for English.

25.     In conjunction with the start of the 2012-2013 academic year, the University

adopted a Code of Student Ethics (CSE) and Section A. Level I: 'Zero Tolerance" Misconduct,

prohibited assault, harassment, fighting, hazing, theft, weapons & firearms, and explosives

("Level I Offenses"), available on Defendant SSU's website.

1.     SSU's Level I: "Zero Tolerance" Misconduct policy, applicable to cases
involving allegations of assault, harassment, and fighting states in relevant part:

> Students are subject to disciplinary action for harassing,
> threatening, -including any terrorists acts-, intimidating,
> coercing, or using physical force in a manner which causes
> another person of the University community or a guest of
> the University to be reasonably apprehensive or which
> endangers the health or safety of oneself or another person.
> Harassing, assaulting, stalking, intimidating, threatening, or
> abusing another person by written, electronic, pictorial or
> oral communication or suggestions is prohibited. Students
> are further prohibited from violating the provisions and
> intent of applicable University policies on Sexual
> Harassment (Sexual Assault & Misconduct), Affirmative
> Action, the Americans with Disabilities Act or on the basis
> of race, national or ethnic origin, creed, age, sex, sexual
> orientation, disability, political affiliation, or other
> ideologies.

26.     The 2012-2013 Student Handbook has no reference or procedure on reporting

forms of violence and harassment that are covered under Title IX.

27.     SSU's Code of Student Rights, Responsibilities, and Ethics set forth the

procedures by which SSU students who have been accused of violating on or more of the

enumerated policies are investigated, heard, and possibly, disciplined.

28.     The Coordinator of Student Ethics is responsible for receiving complaints and

providing procedures to ensure a fair process for the accused and the complainant. The

Coordinator of Student Ethics has responsibility for accepting and processing prohibited

7

discrimination and harassment complaints and will undertake to resolve these complaints impartially, promptly, and confidentially through informal intervention, mediation, or formal investigation.

29.    In addition, the CSE states that upon receipt of a complaint, the Coordinator of Student Ethics will notify the accused student that proceedings have been instituted against him or her and proceed under the policy of the Student Handbook accordingly.

30.    According to the CSE, the accused student is required to report to the Coordinator of Student Ethics within one day of the alleged misconduct. The purpose of the preliminary conference is to allow the Coordinator of Student Ethics, or his or her designee, to discuss the alleged misconduct with the accused student. The accused student may ask any questions he or she desires about the student judicial process. He or she will have an opportunity to present his or her interpretation of the alleged incident.

31.    Student Ethics Coordinator, Corey Phillips, failed to provide Roberts a preliminary conference. Consequently, Roberts was never allowed to view the incident reports, afforded the opportunity to ask questions, or present his interpretation concerning the alleged misconduct.

32.    SSU's Code of Student Rights expressly covenants to provide the following rights to the accused student:

> (a) The right to a non-legal advisor of their choice. (An attorney may be present only when it appears that the hearing also relates to a potential, or actual, criminal charge against the accused. In such an instance, the University may exercise the

8

option to arrange for the attendance of the University's Legal

counsel at any or all judicial proceedings.

(b) The right to testify on his or her own behalf.

(c) The right to question the accuser(s).

(d) The right to present evidence.

(e) The right to call witnesses and to hear and question adverse

witnesses.

(f) The right to remain silent and have no inference of guilt drawn

from such silence

(g) The right to cross examination.

(h) The right to appeal an adverse decision through the judicial

appeals procedures.

(i) The right to attend classes and University function until a

hearing is held and a decision is rendered against the accused

by the appropriate judicial body. (The accused may remain at

the institution pending an appeal, if his or her presence does

not present a threat to himself/herself, any member of the

University community, or the property of the University.)

33. With the exception of (h), the right to appeal an adverse decision through the judicial appeals procedures; SSU failed to provide Plaintiff the rights listed above.

34. Pursuant to the Student Handbook, the Coordinator of Student Ethics may dismiss a complaint and close the case where, *inter alia*, the complaint is not supported by sufficient facts or lacks merit based upon the available evidence.

9

35.     Upon conclusion of the investigation, the Coordinator of Student Ethics failed to provide a written investigation report that included the scope of his investigation, a summary of his findings, recommendations for any corrective actions and/or sanctions, or any preventative remedies for the complainant.

36.     A respondent student has the right to appeal the resolution of a matter within five (5) business days to the Assistant Vice President for Student Affairs ("AVPSA"). The Assistant Vice President shall review the case and make one of the following determinations:

       I.     Affirm the findings and the sanctions.

      II.    Affirm the factual findings, but raise or lower the recommended sanction.

    III.   Reverse on or more findings of guilty, and eliminate or modify the sanction, as appropriate. If procedural error prejudiced the ability of the accused to defend him/her before any of the tribunals the case may be returned for a new hearing.

    IV.   Apply another action as appropriate.

37.     Bonita Bradley, AVPSA/Title IX Deputy Coordinator, ignored Corey Phillips's procedural error of failing to provide a preliminary conference.

## II. Factual and Procedural Background

38.     Joseph Roberts and Janine Dawkins had known each other since spring semester 2011 when Dawkins supported Roberts during his campaign for Student Government Association Vice President. They were acquaintances and had mutual friends together, as

10

Roberts was a member of the fraternity Omega Psi Phi Fraternity and Dawkins a member of Delta Sigma Theta Sorority.

39.     On Wednesday, April 3, 2013, Roberts was in the campus Student Center and saw Dawkins. Dawkins didn't exchange any words with Roberts; she only gave him a side eye. Roberts was in the company of his fraternity brothers when he was approached by another member of Delta Sigma Theta, Deonney Williams. Deonney Williams' words for Roberts were "what the *f*\*\*\* is wrong with you?"

40.     Roberts was receiving insulting and harassing text messages from several members of Delta Sigma Theta, namely from Janine Dawkins and Aliesha Donald.

41.     At 3:35pm on Wednesday, March 27, 2013, Alicia Donald posted the following message using group text messaging app, GroupMe:

> "Please explain to me why [Plaintiff] [was] cheering for other candidates at the debate? The thing about it is I guess [he] thinks its cute but it just further proves my point in the way [he handles himself]...If I am successful in this race sincerely thank AG who have been helping me no questions asked. As for the [person] mentioned kiss my ass and *f*\*\**k* Coleman love lmao"

42.     At or around 3:37pm on Wednesday, March 27, 2013, Dawkins replied:

> "[Donald], don't even worry about it...[Roberts] is knocking on 40 and still hasn't graduated nor can he vote...because he's not enrolled [in classes]. [Roberts]...can't criminally sneak into places to get a degree."

43.     Provocations from Donald, Dawkins, and other members of Delta Sigma Theta targeted towards Roberts were escalating and becoming more frequent.

11

44.    Later that night, Roberts received an email from the University declaring a summary suspension and an "all users" campus alert was issued with an approximate 8" x 5" photo of Roberts via email.

45.    On April 4, 2015, Roberts emailed the Omega Psi Phi Fraternity advisor, Mr. Henry Perry seeking counsel. Mr. Perry never responded to Plaintiff's email.

46.    On April 9, 2015, Roberts submits appeal to the ASVPSA, Bonita Bradley. Plaintiff stated in his appeal that there was "no due process."

47.    On April 15, 2013, Plaintiff receives an email from the Student Ethics Coordinator, Corey Phillips, of four additional charges against Roberts. Phillips' email did not provide a report number or incident report.

48.    On April 12, 2013, Deputy Title IX Coordinator/AVPSA Bonita Bradley responds to Plaintiff's appeal. In her response Bradley "considered if the decision to suspend [Roberts] was reached in a fair and impartial manner; whether or not the action taken was too severe for the nature of the interaction; whether or not [Roberts] was denied due process; and whether or not the evidence present was sufficient enough to support the finding." Bradley did not find cause to modify the sanctions issued by Corey Phillips.

49.    Since the April 3, 2015 suspension, Plaintiff had become withdrawn, gloomy, purposeless, and depressed. Several of Roberts' calls to University Administrators concerning his judicial rights and [anticipated] graduation we ignored and never returned. Plaintiff suffered anxiety, depression, humiliation, sleep deprivation, and began a self medicating regime which included drugs and alcohol. On April 19, 2015, Roberts was found unresponsive after an attempted suicide. Plaintiff was later admitted to Georgia Regional Hospital.

50.    On May 4, 2013, Roberts missed commencement.

51. On May 7, 2013, Roberts was contacted by Academic Advisor, Dr. April Gentry. Roberts shares with her that he had been suspended since April 3, 2015 and hasn't had a hearing. Gentry express her frustration because, as Plaintiff's academic advisor, she wasn't notified of Plaintiff's suspension. Dr. Gentry agrees to investigate the matter on Roberts' behalf. Her primary purpose is to make sure Roberts graduates.

52. Within an hour, Dr. Gentry calls Plaintiff and tells him that the Title IX Deputy Coordinator/AVPSA, Bonita Bradley, would like for you to call her. Roberts calls Bradley and requests a copy of his student record along with the incident reports made by Donald, Dawkins, and Whisenton.

53. On May 13, 2013, Roberts received a letter from the SSU Department of Financial Aid stating: "You have not maintained satisfactory academic progress to continue receiving federal financial aid. Consequently, your financial aid has been suspended…"

54. On May 14, 2013, Roberts emailed Deputy Title IX Coordinator, Ms. Bonita Bradley, in regards to receiving his student file and copies of the incident reports. This was Roberts' second request for both.

55. On May 15, 2013, Roberts emailed the Vice President of Student Affairs (Interim), Dr. Michael Smith, to express his concerns about his lack of judicial procedure and emotions ("confused", "worried", "frustrated", "embarrassed"). Dr. Smith never responded to Plaintiff's email.

56. Also, Ms. Bonita Bradley, contacted Plaintiff and told him "in order to get a hard copy of the incident report, you need to contact Public Safety." At 2:14 p.m. Roberts contacted the SSU Department of Public Safety and was told by Security Officer Moran, "Only your lawyer can get a copy of the incident report. That's the law."

57.     On May 22, 2013, Roberts submitted his third letter of appeal to the Vice President of Student Affairs (Interim), Dr. Michael Smith. In Plaintiff's appeal, he states "Without a hearing or chance to review the incident reports, I don't know the charges, I'm unaware of the incident…I appeal the suspension and imposed sanctions." Plaintiff also submitted a third request for his student record. Dr. Smith responds to Plaintiff's request and states "[his] staff will follow up with Roberts soon regarding this request."

58.     On May 31, 2013, Plaintiff received Dr. Smith's response to his appeal relating to the summary suspension with the following modifications: "Summarily Suspension be held in abeyance until June 18, 2013…Effective June 19, 2013, placed on Strict Disciplinary Probation with restricted student rights and privileges – prohibited from participating in activities…or other extracurricular activities. Due to 'restricted' enrollment status the remaining courses required for graduation will be offered as independent study and/or online-hybrid."

59.     On June 4, 2013, Roberts made a fourth request for his Student Records and incident reports; this was the second attempt directed towards Dr. Smith. The student records and incident reports were necessary in order to make an informed appeal to the University President.

60.     Ms. Bradley sent Plaintiff an email requesting that he "contact the office of Student Affairs to schedule an appointment with [her] to retrieve [his] student judicial file." Bradley also attached the guidelines to submit an appeal to the University President.

61.     On June 5, 2013, Plaintiff contacted Ms. Bradley via phone to obtain his student record. Bradley asked "when can you meet with me to get your file?" Plaintiff told her "[He's] not in Savannah" and asked if she can "mail it to [him]." Bradley was indifferent about mailing Roberts his file because she said "it requires a signature." Roberts made a few suggestions:

14

sending the student file through certified mail or scan and PDF via email. Bradley agreed to the former.

62.   On June 7, 2013, Plaintiff's student records failed to arrive in the mail. Roberts made an appeal to SSU President, Dr. Cheryl D. Dozier, without any knowledge of the incidents, a hearing, the opportunity to defend himself, or the right to know his accusers. In his appeal, Roberts states:

> "I was never afforded the opportunity to read the accusations, know my accuser, the right to a hearing, or given the chance to make a written/verbal statement...I've made repeated attempts to review the incident report and obtain my student file but my requests have essentially gone ignored on every level. I don't know the details of the charges lodged against me; I only know the reported violations. I'm unaware of the incident...I never had a chance for hearing, the chance to review my student file, or obtain a copy of the incident report.
>
> Therefore, I appeal the summary suspension and all imposed sanctions."

63.   On June 10, 2013, Roberts received his student file via mail. The charges on April 3, 2013 and April 15, 2015 were based on the false accusations of Aliesha Donald, Janine Dawkins, and Gabrielle Whisenton. The incident report names text messages, Facebook messages, and Instagram posts as support to charges of harassment – neither of which were attached to the incident report of found in the student record. The charges of Level 2.5 Serious Misconduct (Damage to Property), Level 1.7 Serious Misconduct (Organization/Club Offenses), Level 3.2 Misconduct (Disorderly Assembly), and Level 3.3 Misconduct (Disorderly Conduct) were unsupported and without written statement or evidence.

64.    On July 7, 2013, President Dozier responded to Plaintiff's appeal. Dr. Dozier determined "the sanctions issued by Dr. David Smith, Jr., Vice President for Student Affairs (Interim), on May 31, 2013 remain in place."

65.    On August 1, 2013, Plaintiff submitted his appeal to the Board of Regents of the University System of Georgia. In Roberts' appeal, he states "I was…unaware of my actions and the charges against me. I reached out to several Savannah State administrators who never expressed at anytime the details of the incident. I [do not] understand why it took over two months to view the incident report, why I was never afforded the opportunity to defend myself, and why I was never granted a hearing or due process. At no time did I damage property, assemble others, make harassing remarks, or commit any club offenses. The campus safety incident report that triggered my suspension are [false] accusations."

66.    On January 8, 2014, Roberts' Application for Review was presented to the Board of Regents. In a letter addressed to Plaintiff, the Board states:

> "Please be advised that after investigation, review and careful consideration, the Board respectfully declines your application for review. Your 'restricted' student enrollment status will remain in place, yet you may opt to complete your remaining course online or through independent study, by arrangement with Savannah State University's Office of Academic Affairs, as previously stated by President Cheryl Dozier. This is the final action to be taken by the     Board in this case."

67.    Between March 4, 2014 and on or around March 27, 2014, Roberts, represented by legal counsel, entered settlement negotiations with the University.

68.    On March 17, 2014, in an email sent to Roberts' attorney from SSU In-House Counsel, Mr. Joseph Steffen, Steffen states that "the USG system office has affirmed that we have met…[the] standards [of due process required]." Steffen also requested that Roberts "sign a

release that will hold the University System harmless against legal action related to the totality of the issues surrounding these disciplinary matters."

69. On June 16, 2014, Roberts declined the terms of SSU's settlement agreement.

### IV. Failure to Conduct a Fair and Impartial Investigation

70. In the wake of Dawkins' incident report Plaintiff was relentlessly vilified and threatened on the Internet, text messages, phone calls, along with false slurs on Plaintiff's character and threats of physical harm.

71. Roberts notified the Savannah Chatham Metropolitan Police Department (SCMPD) and made a report.

72. The SCMPD notified the SSU Police Department of Robert's allegations of threats and harassment as early as 10:42pm on April 3, 2014. The SSU Police Department never investigated the matter nor was the incident report forwarded to the SSU Department of Student Affairs.

73. When Roberts inquired as to the status of the investigation and his delayed graduation, SSU Administrators offered a variety excuses for the delayed investigation process; for instance, several calls to the AVPSA, Bonita Bradley, were not returned, emails sent to the Vice President of Student (Interim), Dr. David Smith, would sometimes take weeks for a reply, and telephone calls and emails to Omega Psi Phi Chapter Advisor, Henry Perry, were never returned.

74. Despite its own self-imposed guidelines, SSU engaged in a dilatory investigative process by delaying the questioning of witnesses, and acting without any sense of urgency to resolve the matter despite Roberts's upcoming (anticipated) graduation date.

75. SSU's failure to provide an "adequate, reliable, and impartial investigation" and a "prompt and equitable" process constituted a violation of its duties under Title IX.

76.     No one from SSU's administration or Title IX office ever contacted Plaintiff during either the spring 2013 semester of Plaintiff's senior year or the subsequent semesters thereafter, regarding disciplinary proceedings or investigation of the claims against him.

77.     SSU knew that it had duties to investigate, accommodate, and protect both male and female victims of harassment such as Plaintiff and to investigate and sanction those responsible in a manner that addressed the harassment and prevented its recurrence.

78.     In 2013, Bonita Bradley was SSU's Deputy Title IX Coordinator, the second in charge of SSU's Title IX office and the individual who oversaw SSU's Department of Student Affairs together with Dr. Irvin Clark. Along with SSU campus police officials, Bradley and Camacho were for Title IX purposes appropriate persons with authority to take corrective action.

79.     Senior SSU Department of Student Affairs and Bonita Bradley had actual knowledge that Roberts reported being denied a proper investigation as of no later than April 4, 2013, one day after Donald's incident report.

80.     Despite the SSU Department of Public Safety being on notice within hours of Roberts' SCMPD incident report of harassment, and the SSU Department of Student Affairs awareness of his report, the incident was never reported by either of those departments to SSU Title IX coordinator, Toya Camacho.

## SSU Department of Public Safety Learns of Felony and Conceals it from the School's Administration

81.     SSU has a demonstrated history of gender discrimination. In April of 2011, Danehsia Ferguson, a fellow student at SSU committed a felony against Roberts by violating O.C.G.A. § 16-9-93(b)(1) (Computer Trespass). Plaintiff submitted a police report and requested to pursue further action against Ferguson. (A copy of the incident report is attached hereto as Exhibit B.)

82.    The SSU Department of Student Affairs, in concert with the SSU Department of Public Safety took steps to ensure that Ferguson's felony would not be investigated by either the university or law enforcement.

83.    Both departments chose to conceal the allegation of computer trespass from the rest of the university and specifically from the Title IX Coordinator in deliberate violation of their duties under Title IX.

84.    The SSU Departments of Student Affairs and Public Safety knew that they were committing gross violations of Title IX by hiding the report from the administration.

## V. Gender Bias Against Joseph Roberts as the Male Accused

85.    SSU was required to conduct an impartial and unbiased investigation.

86.    Upon information and belief, there are no reported incidents of male complaints against female students for harassment and/or there are no reports of female accused students being disciplined for harassment against male complainants.

87.    Upon information and belief, SSU is knowledgeable of the fact that complaints of harassment are disproportionately lodged by females against males.

88.    In fact, individuals of the SSU community have indicated that when males are accused by female complainants of harassment, they are invariably found guilty.

89.    At all times, Aliesha Donald, Janine Dawkins, and Gabriele Whisenton's voluntary and false incidents reports were used by SSU to bolster their justification for Roberts' summary suspension. Yet, despite Donald feeling "afraid for her life", she failed to follow the advice of the SSUPD and never filed an incident report with the SCMPD, the agency with jurisdiction im Roberts and Donald's neighborhood.

19

90. Furthermore, without the opportunity to present evidence or testimony, Roberts was unable to defend himself, the only support for Roberts's claim was in his letter of appeal to the Board of Regents. Nonetheless, the Board of Regents found President Dozier's account more credible than Roberts' which contradicted SSU's claim.

91. Moreover, throughout the investigation and judicial procedure the SSU Department of student affairs failed to follow significant procedure and policy that would have proven Donald, Dawkins, and Whisenton's report's false. Specifically, if provided a hearing Roberts would have provided testimony that described in considerably more detail the actions of Alicia Donald that unmistakably demonstrated both her anger and targeted malevolence towards Roberts, as well the incidents on or around April 3, 2013.

92. Yet, because Roberts was never provided a hearing or the opportunity to make a statement on his behalf, the SSU Department of Student Affairs elevated Donald, Dawkins, and Whisenton's incident reports as sacrosanct, and then deliberately removed any opportunity for Roberts to provide an account that was inconsistent with theirs.

93. In fact, an individual of the SSU community emphatically believes that the investigative procedures of the SSU Department of Student Affairs were slanted in a way that did not accurately and/or thoroughly represent Roberts's version of the events.

94. Upon information and belief, once a male student is accused of harassment at SSU, he will be invariably found responsible. The investigative reports and judicial procedures are deliberately biased against the male student accused.

95. Thus, the Board of Regents and SSU's reliance on Donald's, Dawkins, and Whisenton's unsupported statements, combined with the omission of numerous portions of the

SSU judicial policy and procedure, evidence a slanted investigation and clear gender bias against the male accused in violation of Joseph Roberts' right to fair process.

## VI. Failure to Abide by the Requisite Preponderance of Evidence Standard

96.     The U.S. Department of Education Office of Civil Rights and the SSU Student Handbook require that a preponderance of evidence standard be used to evaluate allegations of harassment. The SSU Student Handbook defines "preponderance of evidence" as: "the basis of whether it is 'more than likely than not' that the accused student violated the Code of Student Ethics." The preponderance is based on the more convincing evidence and its probable truth and accuracy, not on the amount of evidence.

97.     The preponderance of the evidence standard does not equate to judging the accused as guilty until proven innocent. In fact, nowhere in the Department of Education's guidelines or SSU's policies is such a standard referenced. However, SSU's investigation process demonstrated a clear gender bias which resulted in a Decision that did not afford Joseph Roberts the requisite presumption of innocence.

98.     Specifically, the SSU Department of Student Affairs placed the burden of proof on Roberts to establish that Janine Dawkins, Aliesha Donald, G. Whisenton's accusations were false, instead of placing the burden of proof on Dawkins, Donald, and Whisenton to establish that their claims were true.

99.     Donald and Dawkins demonstrated their malevolent intent through their words, by posting derogatory remarks directed towards Roberts in the GroupMe messaging mobile application, as well as through their actions, by submitting false incident reports.

21

100. Yet, President Dozier and the SSU Department of Legal Affairs disregarded the omission of several key aspects of the university's judicial procedure, in finding that a preponderance of the evidence supported Dawkins, Donald, and Whisenton's false allegations.

101. Upon accepting Dawkins, Donald, and Whisenton's uncorroborated account of the events, the SSU Police Department and SSU Department of Student Affairs discriminated against Roberts, based solely on his gender. A fair reading of the incident reports reveals that Dawkins, Donald, and Whisenton's accounts are contradictory and inconsistent, while Roberts was denied the right to provide a corroborated and substantiated account. Yet the burden of proof was incorrectly placed on Roberts and his account of the events was inexplicably deemed less credible than his accusers.

102. Furthermore, upon information and belief, the standard utilized by SSU in investigating harassment complaints was revised in 2011 from a "clear and convincing evidence" standard to the much lower "preponderance of evidence" standard. Upon information and belief, SSU now provides training related to its harassment/sexual misconduct policies to all students, a practice demonstrating the level of importance SSU places on advising students of the applicable standards. Thus, the failure of SSU to properly abide by its governing standard related to harassment cases was in and of itself a violation of Title IX.

## VII. The Sanction was Unwarranted and
## Disproportionate in Light of the Circumstances

103. SSU relied on an improper interpretation of the "2011 Dear Colleague Letter" to justify its recommendation that summary suspension was the appropriated remedy to impose on Roberts. Equating Roberts to a threat was entirely unfounded and damaging. Notably, not one of the SSU administrators (or the members of The Board of Regents) acknowledged the flawed and biased judicial prejudice. Yet, the Coordinator of Student Ethics, Corey Phillips, and the

AVPSA, Bonita Bradley, accepted at face value Donald, Dawkins, and Whisenton's unsubstantiated statements and eliminated all exculpatory witness observations and statements in making this assessment.

104.    Additionally, upon information and belief, in making its decision, the Vice President of Student Affairs, Irvin Clark, consulted with SSU in-house counsel, Joseph Steffen, and relied on Steffen's interpretation of the "2011 Dear Colleague Letter". Ironically, following the Office of Civil Rights Dear Colleague Letter of 2011 and SSU's subsequent decision to change the evidence standard, there was great public concern over what that set of rules would do to the rights of students, acknowledging in an article dated April 2, 2012 that "[t]he consequences for someone expelled...are enormous and will follow him throughout his life, leading to rejection by other schools...a great deal of stigma...[t]o impose those consequences on someone requires a rigorous standard of proof and many due process protections to ensure fairness." *See* http://cornellsun.com/blog/2012/04/04/rights-advocates-spar-over-policy-on-sexual-assault/. Nonetheless, the SSU Department of Student Affairs and the SSU Office of the President relied on Steffen's interpretation in determining that Roberts suspension and sanctions were warranted.

105.    Ultimately, a student who denies the charges is entitled to a fair hearing before being subjected to serious, life-changing sanctions. These cases are likely to involve highly disputed facts, and the "he said/she said" conflict is often complicated by the effect of drugs.

106.    Upon information and belief, Donald was under the influence of a controlled substance when she submitted her incident report. On Saturday, September 21, 2013, the Thunderbolt Police Department arrested Aliesha Donald for possession of marijuana.

107.    Notably, Dr. Irvin Clark and Mr. Corey Phillips are no longer employed by SSU. Upon information and belief, a substantial cleaning of the house has occurred within the SSU Department of Student Affairs since the conclusion of Roberts's case last year.

108.    As both Roberts and Dawkins were last semester seniors at the time the investigation concluded, there was little to be gained in meting out the severe sanction of suspension and withholding Robert's degree for subsequent semesters. Further, the Sanctions were disproportionately severe in that Roberts was a student in good standing, excelled academically, and SSU had no reported precedents for student found responsible of similar charges.

109.    As a result of Defendant SSU's actions, Joseph Roberts's mental health and economic future is severely compromised.

## VIII. Joseph Roberts's Entire Future is Severely Damaged by Savannah State University's Actions

110.    Roberts was so distraught from SSU's actions on and around April 3, 2013 that on the evening of April 19, 2013 he attempted suicide. Roberts was found non-responsive by his closest friend and was consequently admitted to Georgia Regional Hospital. Roberts continues to suffer from SSU's negligence and intentional infliction of emotional distress.

111.    In addition to damages sustained as a result of the Defendant's negligent investigative procedure, Roberts's inability to attend his own graduation or receive his diploma on graduation day caused tremendous damages to and limited Roberts's career prospects.

112.    Even though Roberts is permitted to receive his diploma, his academic and disciplinary record is irrevocably and irreversibly tarnished and will not withstand scrutiny by a potential employer or graduate program.

113.    As a result of Defendant SSU's actions, Roberts's financial resources used to provide him a higher education have been squandered.

114.    Without appropriate redress, the unfair outcome of SSU's discriminatory judicial procedures will continue to cause irreversible damages to Roberts, with no end in sight. Roberts seeks redress from this Court to undo the wrongs occasioned by Savannah State University.

## AS AND FOR A FIRST CAUSE OF ACTION
### Violation of Title IX of the Education Amendments of 1972

115.    Joseph Roberts repeats and realleges each and every allegation hereinabove as if fully set forth herein.

116.    Title IX of the Education Amendments of 1972 provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

117.    Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX of the Education Amendments of 1972, even though there is very little federal funding of school sports.

118.    Upon information and belief, Defendant Savannah State University receives federal funding.

119.    Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student...complaints alleging any action which would be prohibited by" Title IX regulations thereunder 34 C.F.R. § 106.8(b)

(Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice). Such prohibited actions include all forms of harassment, including sexual assault and rape.

120. The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also "[accord] due process to both parties involved…"

121. The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include, at a minimum:

a. "Notice…of the procedure, including where complaints may be filed";

b. "Application of the procedure to complaints alleging [sexual] harassment…";

c. "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

d. "Designated and reasonably prompt timeframes for the major stages of complaint process"; and

e. "Notice to the parties of the outcome of the complaint…"

122. A school also has an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes [harassment]."

123. Based on the foregoing, supra, at ¶ ¶ 38-114, Defendant SSU imposed sanctions on Roberts that were disproportionate to the severity of the charges levied against him and without any consideration of his innocence.

124. Based on the foregoing, supra, at ¶ ¶ 38-114, Defendant SSU's guidelines and regulations are set up to disproportionately affect the male student population of the SSU

26

University community as a result of the higher incidence of female complainants of harassment against male complainants of harassment.

125.     Based on the foregoing, supra, at ¶ ¶ 38-114, male respondents in harassment cases at SSU are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of evidence, or lack thereof.

126.     As a result of the foregoing, Joseph Roberts is entitled to damages in an amount sufficient to deter any future similar conduct, plus prejudgment interest, medical expenses, costs and disbursements.

## AS AND FOR SECOND CAUSE OF ACTION
## Breach of Contract

127.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

128.     Based on the aforementioned facts and circumstances, Defendant SSU breached express and/or implied agreement(s) with Roberts.

129.     Defendant SSU committed several breaches of its agreements with Plaintiff, including, without limitation:

> The policy of Savannah State University is to implement affirmative action and equal opportunity for all employees, students and applicants for employment or admission without regard to race, color, religion, national origin, gender, gender identity, sexual orientation, age, veteran status, and physical or mental disability.
> Through appropriate procedures and guidelines, University disciplinary measures will be imposed on students for certain conduct which adversely affects the University's pursuit of its educational purposes and goals, which violates or shows a disregard for the rights of other members of the University community, or which endangers property within the classroom environment or persons on the University's campus, its controlled or leased properties, or at University-sponsored events. The judicial system,

27

which is administered by the Division of Student Affairs, is designed to provide a fair, educational process for accountability of student conduct. Furthermore, the judicial process aims to promote the development of individual integrity, to protect the rights of members of the University community, and to develop individual responsibility.

The University will not exclude any person from participation in its programs or activities on the basis of arbitrary considerations of such characteristics as age, color, disability, ethnicity, gender, marital status, national origin, race, religion, sexual orientation, or veteran status. As such, students have the right to be free from such discrimination arising from programs and activities of the University. Students who believe that they are victims of such discrimination may obtain information concerning the University's affirmative action policy, racial harassment, sexual harassment, and other applicable harassment policies from the Office of Student Affairs.

A student who is a victim of any misconduct for which disciplinary proceedings are conducted under the Code of Student Ethics is entitled to participate and/or be present at all proceedings, except for the final deliberative process in which the adjudicatory body weighs the evidence presented and arrives at a decision. Furthermore, a victim has the right to be notified of the outcome of the disciplinary proceedings within five business days including the sanction levied against the student(s) committing the misconduct.

No rights are more highly regarded at Savannah State University than the first amendment guarantees of freedom of speech, freedom of expression, and the right to assemble peaceably.

Students accused of violating the Code of Student Ethics shall be entitled to an expeditious hearing of the case. Students alleged to have violated the Code of Student Ethics will be informed in writing of the reasons for the proposed disciplinary action with sufficient particularity and in sufficient time to ensure opportunity to prepare for the hearing. A student may have a non-legal advisor or member of the campus community present during the interview process and any subsequent adjudicative process.

Savannah State University is covered by the Family Educational Rights and Privacy Act of 1974 (FERPA), as amended. It is designed to protect the students' rights with regard to education records maintained by the institution. Under the Act, students may inspect and review their own education records maintained by the institution and challenge the content of the records (except grades which can only be challenged through the academic appeal procedure) on the grounds that they are inaccurate, misleading or in violation of privacy or other rights.

A violation of any section of the [Code of Student Ethics] will lead to disciplinary action regardless of factors such as class level (i.e. freshman, sophomore, junior, senior, graduate student), age, race/ethnicity, place of residence (e.g., University Village, University Commons or traditional residence hall), or whether on or off campus.

Students are subject to disciplinary action for falsifying information to a University official or office, for misrepresenting information, or for lying, either through written or oral mediums.

Students are subject to disciplinary action for: (d) knowingly falsifying, distorting, or misrepresenting information before a judicial body or administrator; and (f) knowingly initiating a judicial proceeding without cause.

Although Savannah State University is not responsible or liable for student off-campus events or behaviors, it does reserve the right, in the interest of protecting students and the University from harm, to take action in response to behavior off-campus that violates University policies and when the behavior or misconduct clearly contravenes the University's interests and purposes.

Any member of the University community may file a complaint against any student or student organization for misconduct by contacting the Office of Student Affairs, the Office of Student Ethics, or the Department of Public Safety. Both offices both offices work collaboratively to address complaints. While a student may make a complaint to either office, certain complainants should be directed immediately to the Department of Public Safety. In particular, complaints that are of a criminal nature or that present an immediate danger to the safety and well-being of

> the complainant or any other individual or any property
> should be directed immediately to the Department of Public
> Safety, though a complainant can discuss the matter with
> the Office of Student Affairs or the Office of Student
> Ethics. If a student has any doubt about the nature or
> seriousness of a complaint, any of these offices are willing
> to receive the information. Nevertheless, complaints should
> be submitted as soon as possible after the incident has taken
> place. The administrator and/or staff person with whom the
> complainant discusses the incident will demonstrate an
> ethic of care and concern.
>
> Upon receipt of a complaint, the Coordinator of Student
> Ethics will notify the accused student that proceedings have
> been instituted against him or her. The accused student is
> required to report to the Coordinator of Student Ethics
> within one day of the alleged misconduct. The purpose of
> the preliminary conference is to allow the Coordinator of
> Student Ethics, or his or her designee, to discuss the alleged
> misconduct with the accused student. The accused student
> may ask questions he or she desires about the student
> judicial process. He or she will have an opportunity to
> present his or her interpretation of the alleged incident.

130.    As a direct and foreseeable consequence of these breaches, Roberts sustained
tremendous damages, including, without limitation, emotional distress, loss of career
opportunities, economic injuries, and other direct consequential damages.

131.    Plaintiff is entitled to recover damages for Defendants' breach of the express
and/or implied contractual obligations described above.

132.    As a direct and proximate result of the above conduct, actions and inactions,
Roberts has suffered physical, psychological, emotional and reputational damages, economic
injuries and the loss of educational and career opportunities.

133.    As a result of the foregoing, Plaintiff is entitled to damages in an amount
sufficient to deter any future similar conduct, plus prejudgment interest, medical expenses, costs,
and disbursements.

## AS AND FOR A THIRD CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing

134.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

135.    Based on the aforementioned facts and circumstances, Defendant SSU breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Roberts by meting out a disproportionate Sanction of suspension and withholding his degree, notwithstanding the lack of evidence in support of Aliesha Donald, Janine Dawkins, and Gabrielle Whisenton's claims.

136.    As a direct and foreseeable consequence of these breaches, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, attempted suicide, loss of career opportunities, economic injuries and other direct and consequential damages.

137.    Plaintiff is entitled to recover damages for Defendants' breach of the express and/or implied contractual obligations described above.

138.    As a result of the foregoing, Joseph Roberts is entitled to damages in an amount sufficient to deter any future similar conduct, plus prejudgment interest, medical expenses, costs, and disbursements.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Unfair or Deceptive Trade Practices

139.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

140.    The "Fair Business Practices Act of 1975," O.C.G.A. Section 10-1-390 *et seq*.: Uniform Deceptive Trade Practices Act provides consumer protection by declaring as unlawful "a person engages in a deceptive trade practice when, in the course of his business, vocation, or

occupation he: (9) advertises goods or services with the intent not to sell them as advertised."

See O.C.G.A. 10-1-372.

141. SSU's policy on Title IX compliance states, among other things:

Title IX prohibits sex discrimination in any university program including, but not limited to health services, counseling, psychological services, athletics, admissions, academic programs, extracurricular activities, employment, financial aid, housing, and student services. **Title IX prohibits discrimination by and against both males and females, by** students, **faculty and staff**, and visitors.

**The policy of Savannah State University is to implement affirmative action and equal opportunity for all** employees, **students** and applicants for employment or admission **without regard to** race, color, religion, national origin, **gender**, gender identity, sexual orientation, age, veteran status, and physical or mental disability.

142. The 2012-2013 SSU student handbook sets forth the procedure by which SSU students who have been accused of violating one or more of the policies are investigated, heard, and, possibly disciplined.

143. The SSU Deptartment of Student Affairs is responsible for accepting and processing prohibited discrimination and protected-status harassment complaints and must undertake to resolve these complaints impartially, promptly, and confidentially through informal intervention, mediation, or formal investigation.

144. The SSU Rights of Students Accused of Violating the Code of Student Ethics expressly covenants to provide the following rights to the accused student in a judicial proceeding: to be informed in writing of the reasons for the proposed disciplinary action with sufficient particularity and in sufficient time to ensure opportunity to prepare for a hearing; a non-legal advisor or member of the campus community present during the interview process and

any subsequent adjudicative process; the right to question the accuser(s); the opportunity to present his or her interpretation of the alleged incident; and the right to a hearing.

145.    SSU policy requires that the student shall be notified in writing of the decision within three days of the judicial body's decision.

146.    Defendants have engaged in the following acts or practices that are deceptive or misleading in a material way, or committed deceptive acts or practices, which were aimed at the consumer public at large, that were a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances: by causing Roberts to believe that SSU would follow its policies, copies of which were provided to Roberts and are also available on SSU's website; and by causing Roberts to believe that if he paid tuition and fees to SSU, that SSU would uphold its obligations, covenants, and warranties to Plaintiff described in its policies.

147.    Defendant SSU had no intention of following its own policies and procedures for Plaintiff as the male accused of charges in the face of the unsubstantiated accusations made by Aliesha Donald, Janine Dawkins, and Gabrielle Whisenton.

148.    Defendant SSU's stated policies and procedures, together with its violations thereof only with respect to Plaintiff as the male accused of "Harassment", "Damage to Property", "Organization and Club Offense", "Disorderly Assembly", and "Disorderly Conduct", demonstrate SSU's deceptive practices with respect to males accused of harassment at SSU.

149.    Based on the foregoing facts and circumstances, SSU engaged in unfair or deceptive trade practices in violation of O.C.G.A. 10-1-372.

150.    As a result of SSU's deceptive acts and practices, Roberts sustained tremendous damages, including, without limitation, emotional distress, depression, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

151.    As a result of the foregoing, Plaintiff is entitled to damages in an amount sufficient to deter any future similar conduct, plus prejudgment interest, medical expenses, costs, and disbursements.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Estoppel and Reliance

152.    Roberts repeats and realleges each and every allegation herinabove as if fully set forth herein.

153.    SSU's various policies constitute representations and promises that SSU should have reasonably expected to induce action or forbearance by Roberts.

154.    SSU expected or should have expected Plaintiff to accept its offer of admission, incur tuition and fees expenses, and choose not to attend other colleges based on its express and implied promises that SSU would not tolerate, and Plaintiff would not suffer, discrimination by members of the SSU faculty and/or harassment by fellow students and would not deny Roberts his procedural rights should he be accused of a violation of SSU's policies.

155.    Plaintiff relied to his detriment on these express and implied promises and representations made by SSU.

156.    Based on the foregoing, SSU is liable to Roberts based on Estoppel

157.    As a direct and proximate result of the above conduct, Roberts sustained tremendous damages, including without limitation, emotional distress, depression, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

158.    As a result of the foregoing, Roberts is entitled to damages in an amount sufficient to deter any future similar conduct, plus prejudgment interest, medical expenses, costs and disbursement.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Negligence

159.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

160.    SSU owed duties of care to Plaintiff. Such duties included, without limitation, a duty of reasonable care to conduct an impartial and thorough investigation of the allegations of all the charges against him.

161.    SSU breached its duties owed to Roberts.

162.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, depression, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

163.    As a result of the foregoing, Roberts is entitled to damages in  an amount sufficient to deter any future similar conduct, plus prejudgment interest, medical expenses, costs and disbursements.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Title VI of the Civil Rights Act of 1964
### Violation of State of Georgia and Federal Civil Rights Law
### (ALL DEFENDANTS)

164.    Plaintiff repeats and alleges each and every allegation herinabove as if fully set forth herein.

165.    Title VI, of the Civil Rights Act of 1964, provides that "no person in the United States shall, on the ground of race, color, national origin, handicap, religion, or sex, be excluded from participation in, be denied the benefits of, or be  subject to discrimination under any

program or activity receiving Federal financial assistance." Title VI, Civil Rights Act of 1964 §
2000d.

166.    Based on the foregoing *supra*, at ¶¶ 85-95, SSU permitted discrimination against
Roberts on the basis of his sex.

167.    Based on the foregoing *supra*, at ¶¶ 85-95, SSU knew or should have known of
such discriminatory conduct and failed to undertake action to prevent it.

168.    Defendants engaged in the following discriminatory acts or practices against
Plaintiff as the male accused: SSU subjected Roberts to disciplinary action in an arbitrary and
capricious way, and in discrimination against him on the basis of his male sex; upon accepting
Aliesha Donald, Janine Dawkins, and Gabrielle Whisenton's uncorroborated account of events,
Defendants discriminated against Plaintiff, based solely on his gender; SSU failed to adhere to its
own guidelines and regulations, and the guidelines and regulations themselves are insufficient to
protect the rights of male students; the Decision was discriminatory in that given the evidence (or
lack thereof), a discriminatory bias against males was required for a conclusion of harassment to
be reached.

169.    Based on the foregoing facts and circumstances, SSU engaged in unlawful
discriminatory practices in violation of Roberts' rights to fair process.

170.    Based on the foregoing facts and circumstances, SSU engaged in unlawful
discriminatory practices in violation of Title VI of the Civil Rights Act of 1964.

171.    As a direct and proximate result of the above conduct, Roberts sustained
tremendous damages, including without limitation, emotional damages, depression, loss of
educational and career opportunities, economic injuries and other direct and consequential
damages.

172.    As a result of the foregoing, Roberts is entitled to damages in an amount sufficient to deter any future similar conduct, plus prejudgment interest, medical expenses, costs and disbursements.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### Declaratory Judgment

173.    Roberts repeats and realleges each and every allegation hereinabove as if fully set forth herein.

174.    SSU has committed numerous violations of the Parties' contracts and of federal state law.

175.    Plaintiff's future and career prospects have been severely damaged. Without appropriate redress, the unfair outcome will continue to cause irreversible damages to Roberts's future employment prospects, with no end in sight.

176.    As a result of the foregoing, there exists a justiciable controversy between the Parties with respect to the outcome, permanency, and future handling of Plaintiff's formal student record at SSU.

177.    By reason of the foregoing, Joseph Roberts, requests, pursuant to 28 U.S.C. § 2201, a declaration that: (i) the outcome and findings made by SSU be reversed; (ii) Joseph Roberts' reputation be restored; (iii) Roberts' disciplinary record be expunged; (iv) the record of Roberts' suspension from SSU be removed from his education file; (v) any record of the complaints against Plaintiff be permanently destroyed; and (vi) SSU's rules, regulations, and guidelines are unconstitutional as applied.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Joseph Roberts demands judgment against Defendants as follows:

(i)     on the first cause of action for violation of Title IX of the Education Amendments of 1972, a judgment awarding Roberts damages in an amount sufficient to deter any future similar conduct, but at a minimum of $2,000,000; including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, medical expenses, costs and disbursements.

(ii)    on the second cause of action for breach of contract, a judgment awarding Joseph Roberts damages in an amount sufficient to deter any future similar conduct, but at a minimum of $2,000,000; including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, medical expenses, costs, and disbursements;

(iii)   on the third cause of action for breach of the covenant of good faith and fair dealing, a judgment awarding Joseph Roberts in an amount sufficient to deter any future similar conduct, but at a minimum of $2,000,000; including, without limitation, damages to physical well-being, emotional psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, medical expenses, costs and disbursements;

(iv)    on the fourth cause of action under "Fair Business Practices Act of 1975," O.C.G.A. Section 10-1-390 et seq., a judgment awarding Joseph Roberts damages in an an amount sufficient to deter any future similar conduct, but at a minimum of $2,000,000; including without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career

38

opportunities, and loss of future career prospects, plus prejudgment interest, medical expenses, costs and disbursements;

(v)     on the fifth cause of action for estoppels and reliance, judgment awarding Joseph Roberts damages in an amount sufficient to deter any future similar conduct, but at a minimum of \$2,000,000; including, without limitation damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, medical expenses, costs and disbursements;

(vi)    on the sixth cause of action for negligence, a judgment awarding Joseph Roberts damages in an amount sufficient to deter any future similar conduct, but at a minimum of \$2,000,000; including, without limitation, damages too physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, medical expenses, costs and disbursements;

(vii)   on the seventh cause of action under Title VI, Civil Rights Act of 1964 § 2000d, judgment awarding Joseph Roberts damages in an amount sufficient to deter any future similar conduct, but at a minimum of \$3,000,000; damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, medical expenses, costs and disbursements;

(viii)  a declaratory judgment pursuant to 28 U.S.C. § 2201, judicial declaration that: (i) the outcome and findings made by SSU be reversed; (ii) Roberts' reputation be restored; (iii) Roberts' disciplinary record be expunged; (iv) the record of Roberts' suspension from SSU be

removed from his education file; (v) any record of the complaint filed against Roberts' be

permanently destroyed; and (vi) SSU rules, regulations and guidelines are unconstitutional as

applied; and (x) awarding such other and further relief as the Court deems just, equitable and

proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury as to all matters so triable pursuant to Rule

38 of the Federal Rules of Civil Procedure.

**Dated:  Atlanta, Georgia**
**April 2, 2015**

        **Respectfully submitted,**


        **Joseph C Roberts**
        **P.O. Box 490367**
        **Atlanta, GA 30349-0367**
        **Telephone: (305) 764-5866**
        **Email: jroberts.osc@gmail.com**


        *Pro Se Litigant*

December 5, 2014

**Via Certified Mail: 7014 1200 0000 2983 9435**
**and Return Receipt Requested**
Board of Regents of the University
System of Georgia
Mr. Hank M. Huckaby
Office of Chancellor
250 Washington Street NW
Atlanta, GA, 30334

> Claim against Board of Regents of the
> University System of Georgia, University System of
> Georgia, and Savannah State University

Dear Mr. Huckaby,

This letter is being sent pursuant to O.C.G.A. 50-21-26 giving notice of a claim. The claim is brought in the name of Joseph C Roberts, a former student at Savannah State University against the defendant University and certain administrators for federal civil rights violations and other causes of action due to the defendants' arbitrary, unfair, wrongful and unlawful decision to suspend the student, and the Board of Regents final decision on January 8, 2014 to unlawfully deny his student right to hearing and a timely and meritorious appeal.

Joseph C Roberts maintains the above named entities are liable to him as forth below:

- (A) Failure to provide the right to an expeditious hearing and counsel/advisor.
- (B) Failure to provide the right to testify on his own behalf.
- (C) Failure to provide the right to question the accusers.
- (D) Failure to provide the right to present evidence.
- (E) Failure to provide the right to call witnesses and to hear and question the adverse witnesses.
- (F) Failure to provide the right to cross-examination.
- (G) Failure to provide the right to attend classes and University functions until a hearing is held and a decision is rendered by the appropriate judicial body.
- (H) Pursuant to the Fourteenth Amendment of the United States Constitution, failure to provide the right to equal protection of the laws, i.e. to be treated like all persons to whom he is similarly situated.
- (I) Pursuant to the Fourteenth Amendment of the United States Constitution, included but not limited to failure to provide the right to procedural due process, by suspending Joseph C Roberts without providing him a hearing or establishing that he constituted a "threat" that would warrant such an interim restriction, and by unreasonably denying his right to present evidence on his own behalf, and to contest the evidence against him.
- (J) Pursuant to Title IX of the Education Amendments of 1972, failure to provide the statutory right to be free from discrimination on the basis of sex by subjecting Joseph C Roberts to a disciplinary proceeding marked by the aforementioned flaws that resulted in an innocent person being wrongly found to have committed an offense.

*Phone: 678.551.3268 Email: jroberts.osc@gmail.com*
*P.O. Box 490367 | Atlanta, Georgia 30349-0367*

EXHIBIT "A"

Georgia Department of Administrative Services
December 5, 2014
Page 2

_____

      (K) Pursuant to Title IX of the Education Amendments of 1972, failure to provide the statutory right to be free from discrimination on the basis of sex by selectively enforcing Code of Student Ethics (CSE) provisions against him while exhibiting deliberate indifference to CSE violations committed by his accusers.

      (L) Pursuant to Title IX of the Education Amendments of 1972, failure to provide the statutory right to be free from discrimination on the basis of sex by punishing him more severely than a similarly situated female student would have been punished.

      Joseph C Roberts demands payment for his injuries, to include without limitation, his mental and emotional injuries suffered due to the above outlined failures in the amount of $15,000,000. Please direct any inquiries to the undersigned.

Sincerely,

Joseph C Roberts
Pro Se Litigant


cc:    Sam Olens, Attorney General, (Via Certified Mail)
       Dr. Cheryl D. Dozier, University President, (Via Certified Mail)
       Joseph Steffen, University Counsel, (Via Certified Mail)

December 5, 2014

**Via Certified Mail: 7014 1200 0000 2983 8810**
**and Return Receipt Requested**
Georgia Department of Administrative Services
Risk Management Division
Mr. Wade Damron
200 Piedmont Ave. SW, Suite 1804
West Tower
Atlanta, GA, 30334-9010

> Claim against Board of Regents of the
> University System of Georgia, University System of
> Georgia, and Savannah State University

Dear Mr. Damron,

This letter is being sent pursuant to O.C.G.A. 50-21-26 giving notice of a claim. The claim is brought in the name of Joseph C Roberts, a former student at Savannah State University against the defendant University and certain administrators for federal civil rights violations and other causes of action due to the defendants' arbitrary, unfair, wrongful and unlawful decision to suspend the student, and the Board of Regents final decision on January 8, 2014 to unlawfully deny his student right to hearing and a timely and meritorious appeal.

Joseph C Roberts maintains the above named entities are liable to him as forth below:

(A) Failure to provide the right to an expeditious hearing and counsel/advisor.
(B) Failure to provide the right to testify on his own behalf.
(C) Failure to provide the right to question the accusers.
(D) Failure to provide the right to present evidence.
(E) Failure to provide the right to call witnesses and to hear and question the adverse witnesses.
(F) Failure to provide the right to cross-examination.
(G) Failure to provide the right to attend classes and University functions until a hearing is held and a decision is rendered by the appropriate judicial body.
(H) Pursuant to the Fourteenth Amendment of the United States Constitution, failure to provide the right to equal protection of the laws, i.e. to be treated like all persons to whom he is similarly situated.
(I) Pursuant to the Fourteenth Amendment of the United States Constitution, included but not limited to failure to provide the right to procedural due process, by suspending Joseph C Roberts without providing him a hearing or establishing that he constituted a "threat" that would warrant such an interim restriction, and by unreasonably denying his right to present evidence on his own behalf, and to contest the evidence against him.
(J) Pursuant to Title IX of the Education Amendments of 1972, failure to provide the statutory right to be free from discrimination on the basis of sex by subjecting Joseph C Roberts to a disciplinary proceeding marked by the aforementioned flaws that resulted in an innocent person being wrongly found to have committed an offense.

*Phone: 678.551.3268 Email: jroberts.osc@gmail.com*
*P.O. Box 490367 | Atlanta, Georgia 30349-0367*

EXHIBIT "A"

Georgia Department of Administrative Services
December 5, 2014
Page 2

      (K) Pursuant to Title IX of the Education Amendments of 1972, failure to provide the statutory right to be free from discrimination on the basis of sex by selectively enforcing Code of Student Ethics (CSE) provisions against him while exhibiting deliberate indifference to CSE violations committed by his accusers.

      (L) Pursuant to Title IX of the Education Amendments of 1972, failure to provide the statutory right to be free from discrimination on the basis of sex by punishing him more severely than a similarly situated female student would have been punished.

      Joseph C Roberts demands payment for his injuries, to include without limitation, his mental and emotional injuries suffered due to the above outlined failures in the amount of $15,000,000. Please direct any inquiries to the undersigned.

Sincerely,

Joseph C Roberts
Pro Se Litigant


cc:    Sam Olens, Attorney General, (Via Certified Mail)
      Dr. Cheryl D. Dozier, University President, (Via Certified Mail)
      Joseph Steffen, University Counsel, (Via Certified Mail)

SAVANNAH STATE UNIVERSITY DPS
GA0251000

Printed Date: 05/04/2011
Printed Time: 3:14 PM
Page 1 of 2

# Incident Report

| | Incident No. |
|---|---|
| | 110427005 |

| Incident Type | | Counts | Code | | Attempt |
|---|---|---|---|---|---|
| Computer crimes defined; exclusivity of article; civil remedies; criminal penalties | | 1 | 16-9-93 | | ☐ |

| Primary Location: | | | Secondary Location: | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 3219  College Street | | | | | | | | | |

| City | State | Zip | County | | | | |
|---|---|---|---|---|---|---|---|
| SAVANNAH | GA | 31404 | CHATHAM | | | | |

| Zone | Sub Zone | Location | Sub Location | Business Name: |
|---|---|---|---|---|
| | | | | Savannah State University |

| Incident Date | Time | Date | Time | Report Date | Time | Stranger | Weapon Type | Premise |
|---|---|---|---|---|---|---|---|---|
| 04/27/2011 | 16:30 | To 04/27/2011 | 22:22 | 04/27/2011 | 23:05 | No | | SCHOOL / CAMPUS |

| Case Type | Case Status |
|---|---|
| FELONY | UNDER INVESTIGATION |

## Complainant

| Seq. No. | Name: (Last, First, Middle) | | Home Phone | Work Phone | Other Phone |
|---|---|---|---|---|---|
| 1 | Roberts Joseph | | | | |

| Address | | | SSN |
|---|---|---|---|
| | | | |

| Race | Sex | Date of Birth | Age | Employer | School |
|---|---|---|---|---|---|
| BLACK | M | | | Student (915108239) | |

| Height | Weight | Hair | Eyes |
|---|---|---|---|
| 6'01" | 175 | BLACK | BROWN |

## Victim

| Seq. No. | Name: (Last, First, Middle) | | Home Phone | Work Phone | Other Phone |
|---|---|---|---|---|---|
| 1 | Roberts Joseph | | | | |

| Address | | | SSN |
|---|---|---|---|
| | | | |

| Race | Sex | Date of Birth | Age | Employer | School |
|---|---|---|---|---|---|
| BLACK | M | | | | |

| Height | Weight | Hair | Eyes |
|---|---|---|---|
| 6'01" | 175 | BLACK | BROWN |

## Offender

| Reporting Officer | Badge | Suffix | Signature |
|---|---|---|---|
| Officer Barbara  Faitele | 313 | 06 | |

| Approving Supervisor Officer | Badge | Suffix | Signature |
|---|---|---|---|
| CPL Dwight  Williams | 307 | 03 | |

| Approving Officer | Badge | Suffix | Signature |
|---|---|---|---|
| Sgt Lucious  Simmons | 304 | | |

SAVANNAH STATE UNIVERSITY DPS
GA0251000

Case 1:15-cv-00958-LMM   Document 8   Filed 04/29/15   Page 46 of 48

*EXHIBIT "B"*

Printed Date: 05/04/2011
Printed Time: 3:14 PM
Page 2 of 2

# Incident Report

| | | | | | | | | | | Incident No. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | **110427005** |

| Seq. No. | Name: (Last, First, Middle) | | | | | | Home Phone | Work Phone | | Other Phone |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **Ferguson Danehsia** | | | | | | | | | |

| Address | | | | | | | | | SSN | |
|---|---|---|---|---|---|---|---|---|---|---|
| ██ | | | | | ████████ | | | | | |

| Race | | Sex | Date of Birth | Age | Employer | | | School | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **BLACK** | | **F** | **10/05/2011** | **0** | **Student (915068722)** | | | | | |

| Height | Weight | Hair | | Eyes | | ☐ Suspect | ☐ Juvenile | ☐ War. App. ☐ | Arrest | Arrest Date |
|---|---|---|---|---|---|---|---|---|---|---|
| **5'05"** | **130** | **BROWN** | | **BROWN** | | ☐ Primary Aggressor | | ☐ Warrant ☐ | Juv. Arrest | |

| Court Name | |
|---|---|
| | |

GCIC Entry ☐   **Requested** ☐ **Warrant** ☐ **Missing Person** ☐ **Vehicle** ☐ **Article** ☐ **Boat** ☐ **Gun** ☐ **Securities**

**Additional** ☐ A & B ☑ Supplemental ☐ Citation ☐ Accident ☐ Victim Bill of Rights ☐ Vehicle Impound ☑ Inv. Rpt ☐ Evidence Form

**Clearance** **Active**                                                                                                    **Clearance Date:**

**Narrative**

On 04-27-2011 at approximately 4:30 P.M., Officer B. Faitele responded to the Department of Public Safety in reference to a dispute. See investigative report.

| Reporting Officer | Badge | Suffix | Signature |
|---|---|---|---|
| **Officer Barbara Faitele** | **313** | **06** | |
| Approving Supervisor Officer | Badge | Suffix | Signature |
| **CPL Dwight Williams** | **307** | **03** | |
| Approving Officer | Badge | Suffix | Signature |
| **Sgt Lucious Simmons** | **304** | | |

SAVANNAH STATE UNIVERSITY DPS
GA0251000

Case 1:15-cv-00958-LMM Document 8 Filed 04/29/15 Page 47 of 48

EXHIBIT B

Printed Date: 05/04/2011
Printed Time: 3:14 PM

Page 1 of 2

# Investigator Report

Report Date: 04/28/2011    Report Time: 15:09

Incident No.
**110427005**

| Violation(s) | | | | | Counts | Code | Attempt |
|---|---|---|---|---|---|---|---|
| Incident Type | | | | | | | |
| Computer crimes defined; exclusivity of article; civil remedies; criminal penalties | | | | | 1 | 16-9-93 | ☐ |

| Offender | | | | | | | | | Home Phone | Work Phone |
|---|---|---|---|---|---|---|---|---|---|---|

| Seq. No. | Name: (Last, First, Middle) | | | | | | | | Home Phone | Work Phone |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **Ferguson , Danehsia** | | | | | | | | | |

| Address | | | | | | | | | SSN |
|---|---|---|---|---|---|---|---|---|---|

| Race | | Sex | Date of Birth | Employer | | | School | |
|---|---|---|---|---|---|---|---|---|
| **BLACK** | | F | 10/05/2011 | Student (915068722) | | | | |

| Height | Weight | Hair | | Eyes | | | | |
|---|---|---|---|---|---|---|---|---|
| 5'05" | 130 | BROWN | | BROWN | ☐ Suspect | ☐ Warrant | ☐ Arrest | |

**Supplemental**

On 04-27-2011 at approximately 4:30 P.M., Officer B. Faitele responded to the Department of Public Safety in reference to a dispute. Upon arrival, Officer Faitele spoke with Ms. Danehsia Ferguson who advised that, she was having a dispute with her ex boyfriend Mr. Joseph Roberts (915108239). Ms. Ferguson advised that, Mr. Roberts was spreading rumors on Twitter that she infected Mr. Roberts with a venereal disease. Ms. Ferguson also advised that although they were not dating anymore, he was continuing to send her text messages.

Ms. Ferguson advised that she only wanted us to speak with Mr. Roberts and advise him that she no longer wanted any communication with him. She also requested that we ask Mr. Roberts to stop spreading rumors about her on any social network. Officer Faitele advised Ms. Ferguson that she would speak with Mr. Roberts and added that if she expected him to leave her alone that, she would have to do the same. Ms. Ferguson agreed.

At approximately 5:15 P.M., Officer Faitele and Officer A. Williams went to Bostic Hall room # 106 and spoke with Mr. Roberts. Mr. Roberts advised that, yes, he was texting her and also telling people what happened between them on his Twitter page. Mr. Roberts went on to explain that he was extremely upset because he had just found out that he tested positive for a venereal disease and was positive that Ms. Furguson was responsible. Officer Faitele explained the repercussions of continuing this conduct and advised him to stop all communications with Ms. Ferguson. Officer Faitele also explained to Mr. Roberts that she advised Ms. Ferguson to do the same.

Mr. Roberts agreed to stop communicating with Ms. Ferguson and advised that if he had any complaints in regards to this incident, he would report it to the Department of Public safety. At approximately 9:20 P.M., Officer Faitele was approached by Mr. Roberts in the parking lot of Hubert Tech. Mr. Roberts advised that, he could not access his Twitter page or his Yahoo email. He went on to explain that he believed that Ms. Ferguson may have had access to his accounts and was concerned about the safety of his bank account information as well as other private information. Officer Faitele asked Mr. Roberts if Ms. Ferguson had any passwords to his accounts and Mr. Roberts replied yes.

At approximately 9:40, Officer Faitele and Officer Williams went to University Village apartment # 522 and spoke with Ms. Ferguson. Ms. Ferguson admitted that she did in fact delete Mr. Roberts Twitter account, his Yahoo email and, changed the password to his Yahoo email account. Ms Ferguson stated that she did this because Mr. Roberts was continuing to make comments about her on Twitter, without using her name. Officer Faitele explained to Ms. Ferguson the repercussions if she continued her actions toward Mr. Roberts. Ms. Ferguson stated that she was very apologetic for deleting the accounts but did not know what else to do. Ms. Ferguson advised that she would leave Mr. Roberts alone.

| Supplemental Officer | Badge | Suffix | Signature |
|---|---|---|---|
| Officer Barbara  Faitele | 313 | 06 | |

| Supplemental Approving Officer | Badge | Suffix | Signature |
|---|---|---|---|
| Sgt Lucious  Simmons | 304 | | |

## Investigator Report

| | Incident No. |
|---|---|
| Report Date: 04/28/2011    Report Time: 15:09 | 110427005 |

Officer Faitele went back to Bostic Hall and spoke with Mr. Roberts who advised that because Ms. Ferguson did not hold up to her end of their agreement, and because he did not know what to expect next, he would like to make a formal report. Mr. Roberts agreed that he would take no further action toward Ms. Ferguson. Chain of command was notified.

§ 16-9-93. Computer crimes defined; exclusivity of article; civil remedies; criminal penalties
(b) Computer Trespass. Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of:

(1) Deleting or in any way removing, either temporarily or permanently, any computer program or data from a computer or computer network;

| Supplemental Officer | Badge | Suffix | Signature |
|---|---|---|---|
| **Officer Barbara Faitele** | 313 | 06 | |
| Supplemental Approving Officer | Badge | Suffix | Signature |
| **Sgt Lucious Simmons** | 304 | | |